# United States Court of Appeals
*for the*
# Fifth Circuit

---

Case No. 19-60293

WILL MCRANEY,

*Plaintiff-Appellant,*

v.

THE NORTH AMERICAN MISSION OF THE SOUTHERN BAPTIST CONVENTION, INCORPORATED,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF MISSISSIPPI IN CASE NO. 1:17-CV-00080
HONORABLE J. DAVIDSON

**BRIEF *AMICI CURIAE* OF THE THOMAS MORE SOCIETY AND THE ETHICS AND RELIGIOUS LIBERTY COMMISSION IN SUPPORT OF DEFENDANT-APPELLEE'S PETITION FOR REHEARING *EN BANC***

STEPHEN M. CRAMPTON
  *Counsel of Record*
THOMAS BREJCHA
THOMAS MORE SOCIETY
309 West Washington Street,
  Suite 1250
Chicago, Illinois 60606
(312) 782-1680
scrampton@thomasmoresociety.org

*Counsel for Amici Curiae Thomas More Society and Ethics and Religious Liberty Commission*

# Certificate of Interested Persons

Counsel of record certifies that the following persons and entities, in addition to those already listed in Defendant-Appellee's Petition For Rehearing En Banc, have an interest in the outcome of this case:

1. Thomas More Society, Amicus Curiae.

2. Ethics and Religious Liberty Commission, Amicus Curiae.

3. Stephen M. Crampton, Counsel of Record for Amici Curiae Thomas More Society and Ethics and Religious Liberty Commission.

4. Thomas Brejcha, Counsel for Amici Curiae Thomas More Society Ethics and Religious Liberty Commission.

/s/ Stephen M. Crampton
Stephen M. Crampton
*Counsel of Record*
THOMAS MORE SOCIETY
309 West Washington Street
Suite 1250
Chicago, IL 60606
(312) 782-1680
scrampton@thomasmoresociety.org

## TABLE OF CONTENTS

                                                                 **Page**

CERTIFICATE OF INTERESTED PERSONS ..................................................... i

TABLE OF AUTHORITIES ............................................................................. iii

INTEREST OF AMICI CURIAE ........................................................................1

STATEMENT OF COMPLIANCE WITH RULE 29 ............................................2

INTRODUCTION ..............................................................................................2

THE FACTS ......................................................................................................3

ARGUMENT.....................................................................................................6

      I.       The First Amendment Protects Religious Institutions from Intrusion by the Courts into Ecclesiastical Matters such as Church Governance, Faith, and Doctrine ............................................6

      II.      As it Stands, the Record Sufficiently Establishes that McRaney's Claims Impermissibly Entail Intrusion into Ecclesiastical Matters. Allowing the Matter to Proceed Because "It is not [yet] Certain" Whether Resolution of the Claims Involve "Purely Ecclesiastical Questions" Violates the First Amendment ..............................................................................10

            A.     The Record Contains Sufficient Evidence ..............................10

            B.     Immediate Dismissal Is Required............................................12

CONCLUSION ................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Farley v. Wisconsin Evangelical Lutheran Synod*,
 821 F. Supp. 1286 (D. Minn. 1993) ................................................8, 11

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*,
 565 U.S. 171, 132 S. Ct. 694 (2012) ................................................ 6

*Jebian v. Hewlett-Packard Co. Employee Benefits Organization
 Income Protection Plan*,
 349 F.3d 1098 (9th Cir. 2003) ........................................................ 3

*Kedroff v. Saint Nicholas Cathedral of Russian Orthodox
 Church in North America*,
 344 U.S. 94, 73 S. Ct. 143 (1952) .................................................. 6

*Langford v. United States,*
 101 U.S. (11 Otto) 341, 25 L. Ed. 1010 (1879) .............................. 9

*Lewis v. Seventh Day Adventists Lake Region Conference,*
 978 F.2d 940 (6th Cir. 1992) ........................................................7, 11

*NLRB v. Catholic Bishop*,
 440 U.S. 490 (1979) ........................................................................12

*Our Lady of Guadalupe School v. Morrissey-Berru*,
 ___ U.S. ___, 140 S. Ct. 2049 (2020) ..........................................6, 7

*Paul v. Watchtower Bible and Tract Soc. of New York, Inc.,*
 819 F.2d 875 (9th Cir. 2007) .................................................7, 8, 9, 11

*Serbian Eastern Orthodox Diocese v. Milivojevich,*
 426 U.S. 696, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976) .................. 7

*Simpson v. Wells Lamont Court*,
 494 F.2d 490 (5th Cir. 1974) ..........................................................2, 7

*Young Apartments, Inc. v. Town of Jupiter FL*,
 529 F.3d 1029 (11th Cir. 2008) ...................................................... 3

## Interest Of Amici Curiae

The Thomas More Society ("TMS") is a non-profit organization devoted to the defense and advocacy of First Amendment rights, including freedom of speech and the free exercise of religion. It is incorporated in Illinois and is based in Chicago, and accomplishes its mission through litigation, education, and related activities.

The Ethics and Religious Liberty Commission ("ERLC") is the moral concerns and public policy entity of the Southern Baptist Convention ("SBC"), the nation's largest Protestant denomination, with over 46,000 churches and 15.2 million members. The ERLC is charged by the SBC with addressing public policy affecting such issues as religious liberty, marriage and family, the sanctity of human life, and ethics. Religious freedom is an indispensable, bedrock value for Southern Baptists. The Constitution's guarantee of freedom from governmental interference in matters of faith is a crucial protection upon which SBC members and adherents of other faith traditions depend as they follow the dictates of their conscience in the practice of their faith.

Amici seek by motion to aid the Court due to the importance of this case not only to the tens of thousands of Southern Baptist churches and their millions of members but to the fundamental rights of all people of faith.

## Statement Of Compliance With Rule 29

No counsel for either party authored this brief in whole or in part. No party or a party's counsel contributed money that was intended to fund preparing or submitting this brief. No person, other than amici curiae, their members, or their counsel, contributed money that was intended to fund preparing or submitting of this brief.

## Introduction

This Court remanded this matter for further development of an evidentiary record establishing that the claims of Pastor McRaney ("McRaney") against the North American Mission of the Southern Baptist Convention, Inc. ("NAMB") involve "purely ecclesiastical questions." (Op. at 4, 7). In fact, an ample factual record has already been developed, showing that this dispute is not one the civil courts may entertain. The panel decision violates First Amendment principles by allowing litigation over issues implicating church governance and other ecclesiastical matters to proceed indefinitely in a secular court, despite a factual record already establishing that the case turns on the resolution of ecclesiastical matters.

"[T]the law is clear: civil courts are barred by the First Amendment from determining ecclesiastical questions." *Simpson v. Wells Lamont Court*, 494 F.2d 490 (5th Cir. 1974) (citations omitted). The only way to safeguard the First Amendment freedoms implicated by judicial interference in religious disputes is to

determine the justiciability of such claims at the earliest possible point in the litigation; not to let them proceed for years as in this case. The panel decision erroneously invites ongoing litigation until it is certain that the claims involve purely ecclesiastical questions.

## The Facts

Although the District Court did not specifically articulate the record facts upon which it relied, the *de novo* standard of review governing this Court's review requires review of the entire record in determining the correctness of the District Court's decision. *See Young Apartments, Inc. v. Town of Jupiter FL*, 529 F.3d 1029, 1037 (11th Cir. 2008); *Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098, 1109 (9th Cir. 2003). Contrary to this Court's conclusion, resolution of McRaney's claims requires no further development of the factual record. The record evidence already demonstrates that court interference in the underlying dispute is constitutionally circumscribed.

McRaney's Complaint is clear that his role as Executive Director of the Baptist Convention of Maryland and Delaware ("BCMD") involved "ministry direction" and directing the "priorities of the organization." (Doc. 2, Complaint ¶IV). The BCMD had 560 member churches that practice the Southern Baptist religious tradition. (Doc. 2, Complaint ¶V). BCMD was one of 42 state convention members of the Southern Baptist Convention. (Doc. 2, ¶V). NAMB is an agency of the

Southern Baptist Convention, which supports its state convention members including BCMD. (Doc. 2, ¶VII; Doc. 48-1, ¶4). The record indicates that NAMB was BCMD's integral partner; it supported BCMD's ministries and operations with financial support as well as nonmonetary support including coaching and development of church pastors and missionaries, providing resources for ministry, developing relationships between BCMD member churches and other state convention churches, church revitalization, and chaplaincy endorsement. (Doc. 48-1, ¶4). NAMB and BCMD's relationship was set forth in the Strategic Partnership Agreement between the two entities. (Doc. 2, ¶VIII-X).

Beginning in 2014, NAMB began "pushing" on its members, including BCMD, a Strategic Partnership Agreement ("the 2014 SPA") that gave it more control over employment decisions over the state conventions governing Southern Baptist Churches. (Doc. 2; ¶X). McRaney opposed the 2014 SPA because he "viewed the proposed SPA as a weakening of the autonomy of BCMD and the relinquishment of all controls to NAMB in the specific area of starting new churches, including the selection, assessing and training and supporting of church planters."[1] (Doc. 2; ¶X). McRaney contends that in light of his disagreement with the 2014

---

[1] A "church planter" is someone charged with starting a new church in a new location.

4

SPA, a church governance document, NAMB attempted to discredit him within the Southern Baptist Convention. (Doc. 2; ¶¶XII-VI).

That McRaney's aim was to impermissibly seek to delve into ecclesiastical matters is illustrated by the subpoena he served upon BCMP. That subpoena sought: "All minutes of meetings of BCMD's Board of Trustees in which McRaney's job performance was reviewed or discussed"; "All minutes of meetings of BCMD's Board of Trustees in which the termination of McRaney's employment with BCMD and/or his resignation of employment was discussed and/or approved"; "All minutes of meetings of BCMD's Board of Trustees during McRaney's term of employment, in which BCMD's Strategic Partnership Agreement with NAMB was discussed and/or acted upon"; and more. (Doc. 37-1, Ex. B). Although the Subpoena was quashed on the basis that it ran afoul of the "ministerial exception" and the "ecclesiastical abstention doctrine" (Doc. 50), it reveals the issues McRaney seeks to litigate.

NAMB's Motion for Partial Summary Judgment asserted that any court interference or entanglement in this matter violated the First Amendment. (Doc. 48, p. 1; Doc. 49, p. 6; Doc. 51, pp. 1-2).

# ARGUMENT

I. **The First Amendment Protects Religious Institutions from Intrusion by the Courts into Ecclesiastical Matters such as Church Governance, Faith, and Doctrine.**

The First Amendment protects the right of religious institutions "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Our Lady of Guadalupe School v. Morrissey-Berru*, __ U.S. ___, 140 S.Ct. 2049, 2055 (2020) ("*Guadalupe*") (citing *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116, 73 S.Ct. 143 (1952)). This non-entanglement principle generally requires that civil courts defer to the resolution of issues of religious doctrine or polity. Civil court review of doctrinal matters inhibits the free exercise of religion and usurps the power of religious authorities to resolve intra-church matters of purely ecclesiastical concern. *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171, 188-89, 132 S.Ct. 694, 706 (2012).

In *Guadalupe*, the United States Supreme Court recently clarified what evidence is sufficient to invoke First Amendment protections in matters of ecclesiastical concern. *Guadalupe* involved an analysis of the application of the ministerial exception, as it relates to claims of wrongful employment termination. To determine whether the exception applies, the Court noted that it was not the title or the religious conviction of the employee that determined whether inquiry into

6

employment decisions would be permitted; rather, "what matters is what an employee does." *Guadalupe*, 140 S.Ct. at 2064 (a Catholic school teacher not given the title of minister and lacking personal religious education was responsible for teaching religious values to children and therefore the court was precluded by the First Amendment from questioning her employer's decisions with respect to her employment).

Many federal appellate and district courts have confirmed a hands-off approach is required when the facts presented are sufficient to determine that judicial involvement would constitute governmental entanglement forbidden by the First Amendment. *See Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372 (1976) (the principle of deference to decisions of church authorities applies to disputes concerning matters of internal church governance); *Lewis v. Seventh Day Adventists Lake Region Conference,* 978 F.2d 940, 942–43 (6th Cir.1992) (court lacked jurisdiction over claims of breach of employment contract, promissory estoppel, intentional infliction of emotional distress and a derivative spousal claim because consideration of those claims would violate the Free Exercise Clause); *Paul v. Watchtower Bible and Tract Soc. of New York, Inc.,* 819 F.2d 875 (9th Cir. 2007) (imposition of tort damages on Jehovah's Witnesses for engaging in the religious practice of shunning would constitute a direct burden on religion); *Simpson v. Wells Lamont Court*, 494 F.2d 490 (5th Cir. 1974) (First Amendment

precluded pastor's claims against church conference even though he presented evidence that the actual reason for his discharge was not based on infidelity to religious doctrine, but based on his inefficiency, his racial opinions and his wife's race); *Farley v. Wisconsin Evangelical Lutheran Synod*, 821 F.Supp. 1286 (D. Minn. 1993) (dismissing defamation claim and stating that "resolution of [plaintiff's] defamation claim would require the court to review [defendant's] bases for terminating him, an ecclesiastical concern, and the veracity of [defendant's] statements" which was not permissible under First Amendment).

The Ninth Circuit's decision in *Paul, supra,* is instructive. In that case, the plaintiff was disfellowshipped from her church and an announcement was placed in the church periodical. Years later, the plaintiff reached out to friends who responded that they could not speak to her because she was disfellowshipped, and some friends informed her that a church elder had instructed them to not speak to her. She filed suit claiming state common law torts of defamation, invasion of privacy, fraud, and outrageous conduct against the church organization for "shunning" her. The court held that the church possessed an affirmative defense of privilege—a defense that permits it to engage in the practice of shunning pursuant to its religious beliefs without incurring tort liability. The court stated:

> Clearly, the application of tort law to activities of a church or its adherents in their furtherance of their religious belief is an exercise of state power. When the imposition of liability would result in the abridgement of the right to free exercise of religious beliefs, recovery

8

> in tort is barred. . . . Permitting prosecution of a cause of action in tort, while not criminalizing the conduct at issue, would make shunning an "unlawful act." Imposing tort liability for shunning on the Church or its members would in the long run have the same effect as prohibiting the practice and would compel the Church to abandon part of its religious teachings.

*Paul,* 819 F.2d at 881 (citing *Langford v. United States,* 101 U.S. (11 Otto) 341, 345 (1879) ("[T]he very essence of a tort is that it is an unlawful act.")). The court noted that no physical assault or battery occurred, and further recognized that intangible or emotional harms the plaintiff endured could not serve as a basis for maintaining a tort cause of action against a church for its practices—or against its members. *Paul*, 819 F.2d at 883. Accordingly, the court held that the claims for defamation and other tortious conduct could not stand. *Id.*

**II. As it Stands, the Record Sufficiently Establishes that McRaney's Claims Impermissibly Entail Intrusion into Ecclesiastical Matters. Allowing the Matter to Proceed Because "It is not [yet] Certain" Whether Resolution of the Claims Involve "Purely Ecclesiastical Questions" Violates the First Amendment.**

**A. The Record Contains Sufficient Evidence.**

In the instant case, there is sufficient evidence in the record that McRaney worked as a minister for BCMD, in concert with NAMD, with duties that included missions, church planting and other efforts to propagate the Southern Baptist faith tradition. (Doc. 2, Complaint ¶IV; Doc. 48-1, Affidavit of Carlos Ferrer, ¶4). McRaney directed a state-level body of the Southern Baptist faith tradition, an organization that supported 560 Southern Baptist churches. The primary, leading convention, or group, is the Southern Baptist Convention which is the umbrella Southern Baptist governing body over all of the various groups of churches. (Doc. 2, Complaint ¶V). Within that hierarchy are several organizations, including McRaney's previous employer and defendant NAMB. (Doc. 2, Complaint ¶VII. See also Doc. 48-1, Affidavit of Carlos Ferrer, ¶4). McRaney disagreed with the direction that NAMB wanted to go in terms of church governance. (Doc. 2; Complaint ¶X). According to McRaney, his employer, BCMD, was persuaded that it wanted to go in a different governance direction than that supported by McRaney. (Doc. 2; Complaint ¶¶X-XII).

Tort claims against churches, such as defamation and intentional infliction of emotional distress, when the alleged statements relate to the plaintiff's role in the church organization, are routinely dismissed. *See, e.g., Lewis, Farley,* and *Paul*, *supra*. Like the plaintiffs in those cases, McRaney was ousted by his church because of a dispute over the governance issues reflected in the 2014 SPA. Also like the plaintiffs in those cases, McRaney sued in tort for damages to his reputation and other non-tangible damages. The First Amendment, however, prohibits punishing NAMB by allowing tort causes of action to go forward and the imposition of tort damages for its conduct in expressing disagreement and disapproval with McRaney's positions on church governance as set forth in the 2014 SPA. Thus, any further inquiry into the propriety or veracity of NAMB's alleged critical statements about McRaney, or the cancellation of speaking opportunities before church conventions, is an unconstitutional intrusion into matters of ecclesiastical concern.

To delve further into BCMD's reasoning for ending its employment of McRaney has already been deemed too intrusive. The Magistrate Judge correctly quashed the subpoena duces tecum served upon BCMD by McRaney on that basis. (Doc. 50). Questioning NAMB's actions relating to BCMD's employment decisions as to McRaney is similarly impermissibly intrusive because it also delves into matters of church governance. McRaney's claims should be dismissed now.

11

### B. Immediate Dismissal Is Required.

It is imperative that dismissal of a case involving matters of ecclesiastical concern occur as soon as possible. As the Supreme Court has indicated, protracted litigation is itself a species of unconstitutional entanglement. *See NLRB v. Catholic Bishop*, 440 U.S. 490, 502 (1979). In *NLRB*, the Supreme Court recognized that the "very process of inquiry leading to findings and conclusions" may impinge on "rights guaranteed by the Religion Clauses." *Id.* In this case, which was filed over three and a half years ago, in April, 2017, additional protracted discovery, will infringe upon NAMB's First Amendment rights as surely as substantive entanglement arising from adjudication by a secular court of McRaney's claims. NAMB's First Amendment rights should not be further burdened by requiring it to continue to litigate McCraney's claims before a secular court. It is already clear that any further inquiry into the matters alleged by McRaney will impermissibly require the court to weigh in on matters of church governance. Accordingly, the matter is ripe for immediate dismissal.

### CONCLUSION

For the reasons set forth herein, amici curiae, the Thomas More Society and the Ethics and Religious Liberty Commission urge the Court to grant Defendant-Appellee's Petition For Rehearing En Banc.

Respectfully,

/s/ Stephen M. Crampton
Stephen M. Crampton
  *Counsel of Record*
Thomas Brejcha
THOMAS MORE SOCIETY
309 West Washington Street
Suite 1250
Chicago, IL 60606
(312) 782-1680
scrampton@thomasmoresociety.org

**<u>Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements</u>**

1. This document complies with the type-volume limitation of Fed. R. App. P. 29(b)(4). Not counting the items excluded from the length by Fed. R. App. P. 32(f), this document contains 2,488 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This document has been prepared using Microsoft Word in 14-point Times New Roman font.

DATED this 20th day of August, 2020.   /s/Stephen M. Crampton
                                        Stephen M. Crampton

# CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2020, I electronically filed a true and correct copy of the foregoing brief with the Clerk of the Court by using the appellate CM/ECF system, which will send notification of such filing to all registered users of the CM/ECF system.

Dated:  August 20, 2020         /s/ Stephen M. Crampton
                                              Stephen M. Crampton